1  Tina Wolfson (SBN 174806)
   twolfson@ahdootwolfson.com
2  Robert Ahdoot (SBN 172098)
   rahdoot@ahdootwolfson.com
3  AHDOOT & WOLFSON, PC
   10728 Lindbrook Drive
4  Los Angeles, California 90024
   Telephone:   (310) 474-9111
5  Facsimile:    (310) 474-8585

6  Frank S. Hedin (SBN 291289)
   fhedin@hedinhall.com
7  David W. Hall (SBN 274921)
   dhall@hedinhall.com
8  HEDIN HALL LLP
   Four Embarcadero Center, Suite 1400
9  San Francisco, California 94104
   Telephone:   (415) 766-3534
10 Facsimile:    (415) 402-0058

11 *Counsel for Plaintiff and the Putative Class*

12

13 **UNITED STATES DISTRICT COURT**

   **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  JOEY P. BLANCHARD, on behalf of THE JOEY PRAKASH BLANCHARD TRUST u/t/d December 22, 1992 as Trustee and on behalf of all others similarly situated, | Case No. 2:19-cv-00935 |
| 16 | **CLASS ACTION COMPLAINT** |
| 17          Plaintiff, | (JURY TRIAL DEMANDED) |
| 18  v. | |
| 19  NATIONSTAR MORTGAGE HOLDINGS, INC.; and NATIONSTAR MORTGAGE, LLC, doing business as MR. COOPER, | |
| 20 | |
| 21          Defendants. | |

22

23

24

On behalf of The Joey Prakash Blanchard Trust, under declaration of trust dated December 22, 1992, as Trustee and on behalf of all others similarly situated, Plaintiff Joey P. Blanchard complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

### NATURE OF ACTION

1.     Plaintiff brings this Class Action Complaint against Nationstar Mortgage Holdings, Inc. and Nationstar Mortgage, LLC, doing business as "Mr. Cooper," and their present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and assigns (collectively, "Nationstar"), to redress a long list of unlawful mortgage servicing practices in which Nationstar has engaged over the past four years at the expense of Plaintiff and numerous other borrowers.

2.     At all times between February 7, 2015 and the present, Nationstar promised its borrowers that it would refund any overpayments inadvertently made in the course of discharging a loan, and that it would only obtain force-placed insurance for a collateralized property if the borrower failed to obtain the requisite property insurance.

3.     Notwithstanding Nationstar's contractually-imposed obligations to refund any overpayments to the borrower after a loan is discharged and to refrain from charging borrowers for unnecessary force-placed insurance, over the past four years Nationstar has systematically billed borrowers – without refund – for the same monthly interest payment multiple times, for accrued interest on already-discharged loans, for

CLASS ACTION COMPLAINT

1   "late fees" in connection with payments that were not even late, and for force-placed

2   insurance on properties that already were adequately insured.

3        4.        These business practices are not only oppressive — they are also plainly

4   illegal.  It's time for Nationstar to return, with interest, the millions upon millions of

5   dollars it has unlawfully collected from and refused to refund to its customers, and to

6   face additional consequences, both remedial and punitive, for having engaged in these

7   wrongful acts.

8        5.        Accordingly, as a result of Nationstar's contractual breaches, unjust

9   enrichment, and other wrongful practices, Plaintiff seeks monetary damages, including

10  actual, compensatory, consequential, and punitive damages, as well as injunctive and

11  declaratory relief, to the fullest extent permitted by law, for herself and all other

12  similarly-situated borrowers who comprise the proposed classes defined below.

13                          **JURISDICTION AND VENUE**

14       6.        Personal jurisdiction and venue are proper in this district because

15  Plaintiff's claims arise in substantial part from contractual documents that expressly

16  require "any suit, action or proceeding arising out of or relating to the Agreement" to

17  be brought in "any Federal or state court sitting in California," and further require that

18  the parties submit themselves to personal jurisdiction in California.  Personal

19  jurisdiction and venue are also proper in this district because Plaintiff resides in this

20  district, because the real property used by Plaintiff to secure the mortgage at issue in

21  this case is located in this district, and because Nationstar does substantial business in

22  this district.

23

24

7.     The Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the claims of the members of the proposed classes exceed $5 million in the aggregate, exclusive of interest and costs; because each of the proposed classes is comprised of at least one-hundred (100) members; and because at least one of the members of each of the proposed classes is a citizen of a different state than Nationstar.  As of June 30, 2017, Nationstar maintained a loan origination and servicing portfolio of approximately $500 billion and more than 3 million customers.[1]  Plaintiff is informed and believes, and thereupon alleges, that the wrongful business practices alleged herein were employed by Nationstar to improperly assess fees, interest, and other charges of the nature alleged herein to a substantial percentage of its customer base during the period of February 7, 2015 through the present.

## **PARTIES**

8.     Plaintiff Joey P. Blanchard, Trustee of The Joey Prakash Blanchard Trust, is, and at all times relevant hereto was, a citizen and resident of Los Angeles, California.

9.     Defendant Nationstar Mortgage Holdings, Inc. and Defendant Nationstar Mortgage LLC, doing business as "Mr. Cooper," are Delaware corporations that maintain their principal places of business in Dallas, Texas. Defendant Nationstar Mortgage LLC, doing business as "Mr. Cooper," is the operating entity of Defendant Nationstar Mortgage Holdings, Inc.  Defendants Nationstar Mortgage Holdings, Inc.

---

[1]     Ben Lane, *Nationstar posts net loss of $20 million, but the news is better than it seems*, Housing Wire, Aug. 3, 2017, *available at* https://www.housingwire.com/articles/40914-nationstar-posts-net-loss-of-20-million-but-the-news-is-better-than-it-seems (last accessed Feb. 3, 2019).

CLASS ACTION COMPLAINT

and Nationstar Mortgage LLC, doing business as "Mr. Cooper," are referred to herein collectively as "Nationstar." Nationstar provides servicing, origination, and other financial and lending services relating primarily to single-family residences throughout the United States.

10.    Nonparty Velocity Commercial Capital, LLC ("Velocity"), a California limited liability company, is a residential mortgage lender that operates throughout the United States.

11.    Nonparty Seneca Mortgage Servicing LLC ("Seneca"), a Washington limited liability company, provides servicing, origination and other financial and lending services related to residential properties throughout the United States. Seneca acts as, *inter alia*, collection agent for mortgage lenders, and acted at times as collection agent of Velocity with respect to the loan Plaintiff received from Velocity, as alleged below.

## BACKGROUND FACTS

12.    Nationstar funded over $19 billion in mortgage loans in the year that ended on December 31, 2017, making it the twentieth-largest mortgage loan originator in the United States.  Occasionally Nationstar sells its underlying mortgage loans on the secondary market, but in such cases generally retains the post-sale servicing rights on the sold loans.

13.    Nationstar is also the largest non-bank residential mortgage servicer (and the third-largest servicer of residential mortgages generally) in the United States. Nationstar services over three million mortgages that, as of December 31, 2017, had unpaid principal balances totaling over $500 billion in the aggregate ($175 billion of

which was booked in 2017). On the mortgage-servicing side, Nationstar's customers include government-sponsored entities such as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corp. ("Freddie Mac"), as well as other entities that own mortgage servicing rights, which Nationstar subservices.

14. In December 2017, the California Department of Business Oversight ("CDBO") reached a $9.2 million settlement with Nationstar to resolve allegations that the company had "overcharged borrowers and failed to properly investigate consumer complaints."[2] The CDBO's investigation found that, since 2009, Nationstar routinely violated the statutory limits on per diem interest and recording fee charges, accepted "unlawful" referral fees from third-party settlement service providers in violation of California law, and "lacked appropriate policies and procedures to conduct a reasonable investigation of complaints involving errors that arose with a prior servicer" (even though California law requires that servicers like Nationstar conduct a "reasonable investigation" when a borrower levies a complaint about alleged servicing errors).[3]

15. In August 2017, during the course of the CDBO's investigation, Nationstar transitioned to its new name, "Mr. Cooper" — a rebranding which the company described as "a representation of our total commitment to transforming the customer experience" and indicative of "the progress we've made through key strategic

---

[2] Ben Lane, *Nationstar (aka Mr. Cooper) reaches $9.2m mortgage servicing settlement with California*, Housing Wire, Dec. 4, 2017, *available at* https://www.housingwire.com/articles/42008-nationstar-aka-mr-cooper-reaches-92m-mortgage-servicing-settlement-with-california (last accessed Feb. 3, 2019).

[3] *See id.*

1    investments and cultural and institutional changes."[4]  In reality, nothing could have

2    been further from the truth.

3        16.    Notwithstanding the company's efforts to rebrand itself to "Mr. Cooper,"

4    and the "numerous steps" it claims to have implemented to "ensure these errors will

5    not happen again," Nationstar's improper billing practices have continued unabated,

6    on a larger scale than ever before.

7        17.    Plaintiff brings this action to put a stop to Nationstar's unlawful mortgage

8    lending and servicing practices and to recover the ill-begotten gains Nationstar has

9    collected from unsuspecting borrowers over the past four years.

10                        **SUBSTANTIVE ALLEGATIONS**

11       18.    In August 2014, Plaintiff received a loan from Velocity secured by real

12   residential property in Los Angeles, California, pursuant to a "Note" and "Loan

13   Agreement" that Plaintiff had entered into with Velocity (collectively, the "Loan

14   Documents").  The loan Plaintiff received from Velocity in August 2014 is referred to

15   herein as the "Loan."[5]

16       19.    The Loan Documents governing the Loan were subsequently transferred

17   to Seneca, either directly by Velocity or through another entity acting as an

18   intermediary.

19

20

---

21   [4]    *Id.*; *see also id.* ("We look forward to continuing to evolve as a company with a
22   customer-centric culture of compliance and innovation.").

23   [5]    *See* "Semi-Annual Adjustable Term Note" dated Aug. 11, 2014 (the "Note"
     pertaining to the Loan), a copy of which is attached hereto as **Exhibit A**; "Loan
     Agreement" dated Aug. 11, 2014 (the "Loan Agreement" pertaining to the Loan), a
24   copy of which is attached hereto as **Exhibit B**.

20.    On or about October 21, 2016, Seneca transferred the Loan Documents governing the Loan to Nationstar, thereby assigning all of the lender's rights and obligations under the Loan to Nationstar.

21.    Thus, from on or about October 21, 2016 through the present, and at all times material to this action, Plaintiff's relationship with Nationstar with respect to the Loan has been governed by the Loan Documents entered into between Plaintiff and Velocity, the rights and obligations of which were ultimately transferred and assigned to Nationstar, via Seneca and/or another entity acting as an intermediary.

22.    On or about October 18, 2017, Plaintiff paid Nationstar the full payoff amount that Nationstar had demanded to discharge the Loan in a payoff statement provided to Plaintiff on or about October 5, 2017.

23.    Between on or about October 21, 2016 and the date on which Plaintiff discharged the Loan, Nationstar collected all of Plaintiff's mortgage loan payments for the Loan, as well as thousands of dollars of additional payments made by Plaintiff to, *inter alia*, fund an escrow account for the Loan.

24.    Unbeknownst to Plaintiff at the time, the monthly mortgage payments she made to Nationstar for the Loan included substantial premiums for force-placed insurance that Nationstar obtained for Plaintiff's property that secured the Loan, despite the fact that Plaintiff already had obtained the requisite insurance for the property.

25.    Additionally, the final payoff amounts demanded by Nationstar for the Loan included charges for unaccrued, post-payoff interest; a nearly four-thousand-dollar monthly mortgage charge that Plaintiff had already paid; and a "late fee"

attributable to a mortgage payment for the month of September 2017 that was timely made.

26.     To date, Nationstar has failed to refund any of these unlawfully-assessed fees, interest, or other charges, as set forth in further detail below.[6]

### I.     Nationstar Charges the Same Monthly Interest Payment to Plaintiff and Numerous Other Borrowers Multiple Times

27.     Unremarkably, the Loan Documents make clear that Plaintiff and every other borrower was required to pay to Nationstar each of the "consecutive monthly installments of principal and interest" that become due on a mortgage loan <u>only one time</u>.

28.     Specifically, the Loan Documents governing the Loan provide, in pertinent part, that Plaintiff "shall pay consecutive monthly installments of principal and interest as follows: $4,082.91 commencing on October 1, 2014, <u>and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter</u>" — "payable at the Lender's main office or at such other place as the lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim." Ex. A at 1 (Note for the Loan) (emphasis added).

29.     Notwithstanding the foregoing contractual provisions, between February 7, 2015 and the present Nationstar has routinely billed borrowers twice for the same

---

[6]     Plaintiff sent several letters to Nationstar's headquarters in Dallas, Texas, including without limitation on August 17, 2018 and October 16, 2018, to inform the company that Plaintiff intended to take legal action if Nationstar failed promptly to remedy, *inter alia*, the aforementioned interest overcharges, force-placed insurance fees, and erroneous "late fee" resulting from a timely-made monthly mortgage payment. In response, Nationstar sent Plaintiff several non-responsive or otherwise evasive letters, and still has not provided a cogent explanation for any of the issues raised by Plaintiff.

monthly interest payment, without refunding the duplicate payment or even deducting the amount of the duplicative charge from the loan's outstanding balance.

30.    For instance, on October 10, 2017 and then again on October 18, 2017, Nationstar collected from Plaintiff <u>the same</u> monthly interest payment for the <u>same</u> month, pertaining to the <u>same</u> Loan.

31.    When Plaintiff demanded that Nationstar refund the duplicative payment made by Plaintiff on October 18, 2017, Nationstar refused to do so.

32.    By charging Plaintiff twice for the interest that accrued on the Loan during a single month, Nationstar breached the Loan Documents, including the provisions cited above in paragraphs 27-28, damaging Plaintiff in the amount of the duplicative payment that Plaintiff remitted to Nationstar on October 18, 2017.

33.    Between February 7, 2015 and the present, Nationstar has likewise billed numerous other borrowers twice for a single month's interest payment and has failed to refund the duplicative payment to the borrower or reduce the outstanding balance of the borrower's loan by the amount of the duplicative payment.

**II.    To Discharge a Loan, Nationstar Forces the Borrower to Pay, Without Reimbursement, Per Diem Interest for Each Day of the Payoff Month, Including for Days on Which an Interest-Bearing Principal Balance no Longer Even Exists**

34.    The Loan Documents for the Loan provide, in pertinent part, that Plaintiff will pay "the principal amount . . . on or before . . . the 'Maturity Date' . . . together with interest from the date hereof on the unpaid principal balance from time to time outstanding <u>until paid in full</u>."  Ex. A at 1 (Note for the Loan) (emphasis added).

35.    The Loan Documents further provide that "[i]nterest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months

<u>except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year</u>." *Id.* at 1 (Note for the Loan) (emphasis added).

36. Notwithstanding the foregoing contractual provisions, at the time a loan is paid off Nationstar charges the borrower for the amount of interest that <u>would have</u> accrued on the loan during the entire payoff month — regardless of the day of the month on which the payoff is actually made. In other words, a borrower who pays off a loan on the first day of a month will be charged the same amount of interest for that month as a borrower who pays off a loan on the last day of the same month. Moreover, Nationstar fails to reimburse borrowers for the per diem interest they are forced to pay for days of the month that fall after their loan's discharge. Nationstar charges and refuses to refund these bogus interest payments to borrowers despite the fact that, upon the loan's discharge, there is no remaining principal balance from which interest could possibly accrue.

37. On October 18, 2017, Nationstar received payment from Plaintiff for the full payoff amount for the Loan, a figure that Nationstar had provided to Plaintiff on October 5, 2018 and had represented as being "good through" October 31, 2017. The reason the figure quoted on October 5, 2017 was "good through" October 31, 2017 was because the figure included, *inter alia*, one final payment of interest computed as the amount of interest that would have accrued from the unpaid principal over the entire month, had Loan 379's entire balance not been paid in full on day 18. But the Loan had been paid in full on October 18, 2017, and was thus not capable of generating interest between October 19 and 31, 2017.

CLASS ACTION COMPLAINT

38.     By collecting payment for interest on the Loan for the period of October 1, 2017 through October 31, 2017 — and by not reimbursing the October 19, 2017 through October 31, 2017 portion of that payment after the Loan had been paid in full on October 18, 2017 — Nationstar breached the Loan Documents, including the provisions cited above in paragraphs 34-35.

39.     Nationstar's breaches of the Loan Documents caused Plaintiff monetary damages, in an amount equal to the per diem interest (computed based on a 360-day year) that would have accrued on the Loan for the thirteen (13) days between October 19, 2017 and October 31, 2017.

40.     Between February 7, 2015 and the present, Nationstar has likewise billed unaccrued, post-payoff interest to numerous other borrowers and has failed to refund the payments borrowers have made for such unaccrued interest.

**III.    Nationstar Billed Plaintiff and Other Borrowers Late Fees for Payments that Were Timely Made**

41.     Nationstar also routinely charges borrowers late fees as a result of monthly mortgage payments that are timely made.

42.     On September 12, 2017, pursuant to the Loan Documents, Nationstar sent Plaintiff a monthly statement pertaining to the Loan, which stated that a monthly payment of $4,911.89 was "due" on October 1, 2017 and that "[i]f payment is received on or after 10/17/2017, a $218.66 late fee will be charged."   A copy of the monthly statement for the Loan dated September 12, 2017 is attached hereto as **Exhibit C**.

43.     On October 10, 2017, pursuant to the Loan Documents, Plaintiff remitted a monthly mortgage payment for the Loan to Nationstar in the amount of $4,911.89,

which was sent via an Automatic Clearing House ("ACH") <u>auto payment</u> from Plaintiff's bank account.

44.     In a letter dated October 26, 2018, a copy of which is attached hereto as **Exhibit D**, Nationstar expressly acknowledged that Plaintiff's payment of $4,911.89 had been received by Nationstar on October 10, 2017. *See* Ex. D at 1.

45.     Thus, Plaintiff's mortgage payment for the Loan for the month of September 2017, as demanded by Nationstar in a monthly statement dated September 12, 2017, was received by Nationstar <u>a full week in advance</u> of the date such payment was due.

46.     Nonetheless, as reflected in a payoff statement for the Loan dated October 18, 2017, Nationstar charged Plaintiff a late fee in the amount of $218.66 as a result of Plaintiff's payment on October 10, 2017, even though such payment was made seven (7) days in advance of the deadline by which Nationstar advised Plaintiff that she must remit payment to avoid the imposition of such a $218.66 late fee.

47.     By assessing Plaintiff a "late fee" as a result of a monthly mortgage payment that was timely made by Plaintiff and timely received by Nationstar, Nationstar breached the Loan Documents, causing Plaintiff damages of $218.66, the amount of the improperly-assessed "late fee."

48.     Between February 7, 2015 and the present, Nationstar has likewise assessed "late fees" to numerous other borrowers as a result of monthly mortgage payments that were made by the borrower and received by Nationstar in advance of the due dates for such payments.

## IV.    Nationstar Places Forced Insurance on the Real Property Used by Plaintiff and Numerous Other Borrowers to Secure Mortgage Loans

49.    Additionally, from February 7, 2015 through the present, Nationstar has force placed insurance on numerous properties used by borrowers to secure the mortgage loans that Nationstar owns and/or services, causing substantial harm to Plaintiff and the other similarly-situated persons she seeks to represent.

50.    Generally speaking, mortgage lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on the property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower.

51.    However, some mortgage lenders and servicers, including Nationstar, employ various force-placed insurance schemes to take advantage of the broad discretion purportedly afforded to them in their standard form mortgage agreements, including by placing unnecessary insurance on the properties of borrowers. For instance, although force-placed insurance is designed to merely protect the lender's interest in the property that secures the loan, lenders and servicers, including Nationstar, often purchase coverage from their exclusive insurers in excess of what is required to cover their own risk, including where the borrower has already obtained hazard insurance for the property.  Moreover, borrowers who for whatever reason have stopped paying for insurance or are deemed, in Nationstar's complete and sole discretion, to be under insured on mortgaged property are charged hyperinflated and

illegitimate noncompetitive amounts for force-placed insurance.  These charges are inflated to include undisclosed kickbacks to Nationstar and/or its partners and affiliates.

52.     The actions and practices of Nationstar in force placing insurance on properties of borrowers when they are not permitted to do so are unconscionable and undertaken in bad faith with the sole objective to maximize profits.

53.     The Loan Documents which govern the Loan provide, in pertinent part:

> 3.8     **Insurance**. <u>Borrower will maintain in force property and casualty insurance on any property of the Borrower, if any, against risks customarily insured against by companies engaged in businesses similar to that of the Borrower containing such terms and written by such companies as may be satisfactory to the Lender,</u> such insurance to be payable to the Lender as its interest may appear in the event of loss and to name the Lender as insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without the Lender's approval: and all such policies shall provide that they may not be canceled without first giving at least Thirty (30) days written notice of cancellation to the Lender. <u>In the event that the Borrower fails to provide evidence of such insurance, the Lender may, at its option, secure such insurance and charge the cost thereof the Borrower</u>. . . .

Ex. B at 4-5 (Loan Agreement for Loan) (emphasis added).

54.     At all times material to this action, including at all times from October 21, 2016 through the date on which the Loan was discharged, Plaintiff maintained "in force property and casualty insurance," *i.e.*, hazard insurance policies, with State Farm Insurance Company on the real property that secured the Loan, in compliance with all of the provisions set forth in Section 3.8 of the Loan Documents governing the Loan, quoted above.

55.     At all times material to this action, including at all times from October 21, 2016 through the date on which the Loan was discharged, Plaintiff had provided

Nationstar evidence, thereby putting Nationstar on actual notice, that Plaintiff maintained an insurance policy with State Farm Insurance Company on the real property that secured the Loan. Such insurance policy sufficiently complied with the obligations imposed upon Plaintiff by Section 3.8 of the Loan Documents.

56. Nationstar nonetheless force placed hazard insurance on Plaintiff's real property that secured the Loan, to the tune of thousands of dollars in premiums charged to the escrow account that Plaintiff had funded for the Loan.

57. At no time did Nationstar or any force-placed insurer retained by or otherwise partnered with Nationstar disclose to Plaintiff that the fees charged by Nationstar to the Loan's escrow account were used primarily to cover unnecessary and excessive force-placed hazard insurance, kickbacks to Nationstar, or any of the other impermissible charges described in this Complaint.

58. Plaintiff does not challenge Nationstar's right to force place insurance where the borrower fails to insure the property in a manner sufficient to protect Nationstar's interest in the property. Rather, Plaintiff challenges Nationstar's manipulation of the force-placed insurance market with an eye toward artificially inflating premiums and placing unnecessary coverage that Nationstar purchases from its partner insurance companies and then wrongfully charges to borrowers, including where, as here, the borrower already obtained hazard insurance for the property. This action is brought in part to put an end to Nationstar's collusive arrangements with the force-placed insurance companies with whom it has partnered, and to recover for Plaintiff and other similarly-situated borrowers the excess amounts they have been charged beyond the true cost of any necessary insurance coverage that was lacking.

59.   There are no material differences between Nationstar's actions and practices in forcibly placing hazard insurance on Plaintiff's property used to secure the Loan and its actions and practices in forcibly placing hazard insurance on the collateralized properties belonging to the other similarly-situated borrowers who comprise the Force-Placed Insurance Class defined below.

## CLASS ACTION ALLEGATIONS

60.   Plaintiff brings this action on behalf of four classes of persons pursuant to Federal Rule of Civil Procedure 23.

61.   To redress and put a stop to Nationstar's practices of billing borrowers for a single monthly interest charge multiple times, Plaintiff brings this action on behalf of herself and the following class (hereinafter, the "Double-Billed Class") pursuant to Federal Rule of Civil Procedure 23:

> All individuals in the United States who, at any time between February 7, 2015 and the present, (i) entered into a mortgage loan; (ii) in connection with that mortgage loan made monthly payments to Nationstar in the amount demanded by Nationstar; (iii) in connection with that mortgage loan paid to Nationstar a monthly interest charge; (iv) after timely paying in full that monthly interest charge received from Nationstar a successive demand for payment of the same, previously-paid monthly interest charge (*i.e.*, pertaining to the same month of the same year of the same loan); and (v) paid the full amount demanded by Nationstar for that previously-paid monthly interest charge, without reimbursement.

62.   To redress and put a stop to Nationstar's practices of charging per diem interest to borrowers after their loans have been paid in full, Plaintiff brings this action on behalf of herself and the following class (hereinafter, the "Post-Payoff Interest Payment Class") pursuant to Federal Rule of Civil Procedure 23:

CLASS ACTION COMPLAINT

> All individuals in the United States who, at any time between February 7, 2015 and the present, (i) entered into a mortgage loan; (ii) in connection with that mortgage loan made monthly payments to Nationstar to cover the amount of interest accrued from the outstanding balance of that loan; (iii) discharged the loan by remitting to Nationstar a payoff amount calculated by Nationstar to include per diem interest for the full payoff month; and (iv) did not receive reimbursement from Nationstar for money paid to cover per diem interest for days that fell after the loan's discharge.

63.     Plaintiff brings this action to redress Nationstar's practices of assessing late fees on mortgage payments that are timely made, on behalf of herself and the following class (hereinafter, the "Late-Fee Class") pursuant to Federal Rule of Civil Procedure 23:

> All individuals in the United States who, at any time between February 7, 2015 and the present, (i) entered into a mortgage loan; (ii) in connection with that mortgage loan remitted a monthly mortgage payment to Nationstar that was received by Nationstar on or before the payment-receipt deadline that the borrower was required to meet in order to avoid incurring a late fee (as set forth in the monthly mortgage statement provided by Nationstar); (iii) in connection with that monthly payment incurred a "late fee"; and (iv) either paid Nationstar the amount charged for that "late fee" without reimbursement or was charged but has not yet paid Nationstar the "late fee."

64.     To redress Nationstar's practices of purchasing insurance for collateral property at inflated prices, Plaintiff brings this action on behalf of herself and the following class (hereinafter, the "Force-Placed Insurance Class") pursuant to Federal Rule of Civil Procedure 23:

> All borrowers in the United States who, from February 7, 2015 to the present, (i) had an outstanding mortgage loan; (ii) in connection with that mortgage loan were charged by Nationstar under a hazard, flood, flood gap or wind-only insurance policy issued by an insurance company retained by Nationstar for residential property; and (iii) either paid to

18

CLASS ACTION COMPLAINT

Nationstar the "net premium"[7] for that insurance policy or did not pay and still owe Nationstar the "net premium" for that insurance policy.

65. The aforementioned classes of persons are referred to at times herein collectively as the "Classes." The time frame of February 7, 2015 through the present — the applicable period of time for each of the Classes — is referred to herein as the "Class Period."

66. Excluded from the Classes are Nationstar and its subsidiaries, parents, affiliates, joint venturers, and any entity in which Nationstar has or had a controlling interest, as well as Nationstar's officers and directors and the immediate families of Nationstar's officers and directors.

67. Plaintiff reserves her right under Rule 23 of the Federal Rules of Civil Procedure to amend or modify the definitions of the Classes and to include additional classes or subclasses, as appropriate after the completion of necessary discovery.

68. This action has been brought and may properly be maintained as a class action against Nationstar pursuant to Federal Rule of Civil Procedure 23.

69. <u>Numerosity</u>. The members of the proposed Classes are so numerous that their individual joinder is impracticable. The number of mortgages held or serviced by Nationstar is in the tens of thousands, which is a reflection of the numerosity of the proposed Classes in this action. Inasmuch as the members of the proposed Classes may be identified through business records regularly maintained by Nationstar and its employees and agents, the number and identities of members of the Classes can be

---

[7] "Net premium" means the amount of premium charged to a borrower for a hazard, flood, flood gap, or wind-only insurance policy issued by an insurance company retained by Nationstar for residential property from February 7, 2015 to the present, less any refund paid or credited to the borrower during that period of time.

1    ascertained. Members of the proposed Classes can be notified of the pending action by

2    e-mail and mail, and notice can be supplemented by publication, if necessary.

3          70.   <u>Existence and Predominance of Common Question of Law and Fact</u>. Rule

4    23(a)(2).  There are questions of law and fact common to the Classes.  These questions

5    predominate over any questions affecting only individual members of the proposed

6    Classes.  These common legal and factual issues include, but are not limited to:

7             a.   Whether Nationstar systematically breached its contractual

8                  obligations imposed by the documents governing Plaintiff's loans

9                  and the loans of the members of the Classes by double billing for

10                 entire months of interest, charging for interest accrued after the date

11                 of a loan's discharge, charging late fees as a result of monthly

12                 payments that are timely made, and charging fees for unnecessary

13                 force-placed insurance;

14            b.   Whether Nationstar has been unjustly enriched by its illegal

15                 conduct;

16            c.   Whether Nationstar must provide damages, restitution and/or

17                 reimbursement to borrowers based on the causes of action asserted

18                 herein; and

19            d.   Whether declaratory and/or injunctive relief is appropriate to

20                 prohibit Nationstar from engaging in this conduct in the future.

21         71.   <u>Typicality</u>. Rule 23(a)(3). The claims of the representative Plaintiff are

22   typical of the claims of each member of the proposed Classes.  Plaintiff, like all other

23   members of the proposed Classes, has been damaged by Nationstar's unlawful conduct

24

as alleged herein.  The representative Plaintiff and members of the proposed Classes were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Nationstar.

72.   <u>Adequacy</u>. Rule 23(a)(4).  The representative Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation.  There are no material conflicts between the claims of the representative Plaintiff and the members of the proposed Classes that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all members of the proposed Classes.

73.   In addition to meeting the prerequisites of a class action, this action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

   a.   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Classes will create the risk of:

   i.   inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the parties opposing the Classes; or

   ii.   adjudication with respect to individual members of the Classes which would as a practical matter be dispositive of

21

CLASS ACTION COMPLAINT

the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.  the parties opposing the Classes have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to each of the Classes as a whole; or

c.  common questions of law and fact exist as to the members of the Classes and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.  the interests of the members of the Classes in individually controlling the prosecution or defense of separate actions;

ii.  the extent and nature of any litigation concerning controversy already commenced by or against members of the Classes;

iii. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

iv.  the difficulties likely to be encountered in the management of a class action.

74.  <u>Injunctive and Declaratory Relief Pursuant to Rule 23(b)(2)</u>.  Nationstar's actions alleged herein are uniform as to members of the proposed Classes.  Nationstar has acted or refused to act on grounds that apply generally to the Classes so that final

1    injunctive and declaratory relief as requested herein is appropriate with respect to each

2    of the Classes as a whole.

3         75.    <u>Predominance and Superiority of a Class Action Pursuant to Rule

4    23(b)(3)</u>. This suit may be maintained as a class action because questions of law and

5    fact common to the Classes predominate over the questions affecting only individual

6    members of the proposed Classes and because a class action is superior to other

7    available means for the fair and efficient adjudication of this dispute.  The damages

8    suffered by individual members of the proposed Classes are small compared to the

9    burden and expense of individual prosecution of the complex and extensive litigation

10   needed to address Nationstar's conduct.  Further, it would be virtually impossible for

11   the members of the proposed Classes to individually redress effectively the wrongs

12   done to them.  In addition, individualized litigation increases the delay and expense to

13   all parties and to the court system resulting from complex legal and factual issues of

14   the case.   Individualized litigation also presents a potential for inconsistent or

15   contradictory judgments.   By contrast, the class action device presents far fewer

16   management difficulties, allows the hearing of claims which might otherwise go

17   unaddressed because of the relative expense of bringing individual lawsuits, and

18   provides the benefits of single adjudication, economies of scale, and comprehensive

19   supervision by a single court.

20        76.    Plaintiff believes that notice will eventually be issued to the members of

21   the Classes setting forth the subject and nature of the instant action. Nationstar's own

22   business records and electronically-store information will be sufficient to effectuate the

23   contemplated notice.

24

23

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On behalf of Plaintiff and the Double-Billed Class)**

77.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

78.    Plaintiff contracted for mortgage lending services on the terms set forth in the Loan Documents (*i.e.*, the "Note" and "Loan Agreement" governing the Loan) that Plaintiff and Velocity entered into on August 11, 2014, the rights and obligations of which were subsequently assigned to Nationstar on October 21, 2016, via Seneca and/or other intermediary entities.

79.    Like Plaintiff, each member of the Double-Billed Class contracted for mortgage lending services with Nationstar directly or with another entity that subsequently assigned the pertinent mortgage loan to Nationstar (or to another predecessor entity which in turn assigned the pertinent mortgage loan to Nationstar), on the same or substantially the same terms as set forth in the Loan Documents that Plaintiff and Velocity entered into on August 11, 2014.

80.    In plain, clear, and simple language, in the Loan Documents and other governing loan-related documentation in effect between February 7, 2015 and the present between Nationstar and Plaintiff (and others similarly situated), Nationstar promised Plaintiff and all other Double-Billed Class members that it would refund any overpayments made by the borrower in the course of paying off his or her loan in full.

81.    Nationstar breached the express terms of the Loan Documents and other governing loan-related documentation in effect between February 7, 2015 and the present by charging Plaintiff and members of the Double-Billed Class twice for a single

month's interest payment, without refunding the duplicate interest payment to Plaintiff or the other Double-Billed Class members, or even deducting the amount of the duplicative charge from the principal balances of the pertinent loans taken out by Plaintiff and the Double-Billed Class members.

82.     Specifically, Nationstar breached its contractual promises to Plaintiff by billing and collecting from Plaintiff two monthly interest payments, for the same month, pertaining to the same mortgage loan (the Loan) — first on October 10, 2017 and then again on October 18, 2017 — and by refusing to reimburse the duplicate payment made by Plaintiff on October 18, 2017.  As a result of Nationstar's contractual breach, Plaintiff suffered monetary damages in the amount of the duplicative, unreimbursed monthly interest payment made by Plaintiff on October 18, 2017.

83.     Between February 7, 2015 and the present, Nationstar has likewise billed each member of the Double-Billed Class twice for a single month's interest and failed to refund the borrower for the duplicative payment.

84.     At no time between February 7, 2015 and the present did any contractual provision exist authorizing Nationstar to bill Plaintiff or any of the other Double-Billed Class members twice for a single month's interest without issuing a refund to the borrower for the duplicative payment.

85.     Plaintiff and members of the Double-Billed Class have performed all or substantially all of the obligations imposed on them under the Loan Documents and any other governing loan-related documentation in effect between February 7, 2015 and the present.

86.     Plaintiff and members of the Double-Billed Class sustained monetary damages as a result of Nationstar's collection of and failure to reimburse duplicative monthly interest payments, in breach of the Loan Documents and other governing loan-related documentation in effect between February 7, 2015 and the present.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiff and the Post-Payoff Interest Payment Class)

87.     Plaintiff repeats and realleges the allegations of paragraphs 1-76 set forth above as though fully set forth herein.

88.     Plaintiff contracted for mortgage lending services on the terms set forth in the Loan Documents (*i.e.*, the "Note" and "Loan Agreement" governing the Loan) that Plaintiff and Velocity entered into on August 11, 2014, the rights and obligations of which were subsequently assigned to Nationstar on October 21, 2016, via Seneca and/or other intermediary entities.

89.     Like Plaintiff, each member of the Post-Payoff Interest Class contracted for mortgage lending services with Nationstar directly or with another entity that subsequently assigned the pertinent mortgage loan to Nationstar (or to another predecessor entity which in turn assigned the pertinent mortgage loan to Nationstar), on the same or substantially the same terms as set forth in the Loan Documents that Plaintiff and Velocity entered into on August 11, 2014.

90.     In plain, clear, and simple language, in the Loan Documents and related account documentation in effect between February 7, 2015 and the present between Nationstar and Plaintiff and others similarly situated, Nationstar promised Plaintiff and

1  all other Post-Payoff Interest Class members that it would refund any overpayments

2  made by the borrower in the course of paying off his or her loan in full.

3      91.    Nationstar breached the express terms of the Loan Documents and other

4  loan-related documentation in effect between February 7, 2015 and the present when,

5  in connection with mid-month payoffs of loans made by Plaintiff and the Post-Payoff

6  Interest Class members, it charged Plaintiff and the Post-Payoff Interest Class members

7  for the full amount of interest that <u>would have</u> accrued on the loan over the entire month

8  in which the payoff was made (even though the loan had been paid off in full prior to

9  the last day of the month and, as such, no interest-bearing principal balance even

10  existed for the post-payoff period of the month).

11      92.    Specifically, Nationstar breached its contractual promises to Plaintiff

12  when it charged and, on October 18, 2017 (eighteen (18) days into the month),

13  collected from Plaintiff a payoff amount for the Loan that Nationstar had computed to

14  include the full amount of interest that would have accrued on the unpaid principal of

15  the loan over the entire 31-day month, and then failed to reimburse Plaintiff the money

16  she had paid to cover interest for the remaining thirteen (13) post-payoff days of the

17  month — days for which interest obviously did not accrue.  As a result of Nationstar's

18  contractual breach, Plaintiff suffered damages equating to the amount of interest that

19  would have accrued, had the loan not been discharged, over the course of October 19,

20  2017 through October 31, 2017, at the rate fixed by the Loan Documents.

21      93.    Between February 7, 2015 and the present, Nationstar similarly billed to

22  each member of the Post-Payoff Interest Payment Class a final payoff amount

23  computed to include the total amount of interest that <u>would have</u> accrued on the

24

pertinent loan over the entire month in which the payoff was made, collected payment from each member of the Post-Payoff Interest Payment Class for the full payoff amount made in the middle of the month (*i.e.*, prior to the final day of the month), and failed to reimburse the members of the Post-Payoff Interest Payment Class for the unaccrued interest they paid to Nationstar for the remaining, post-payoff days of the month.

94.    At no time between February 7, 2015 and the present did any contractual provision exist authorizing Nationstar to bill Plaintiff or any other Post-Payoff Interest Class member for unaccrued post-payoff interest without issuing a refund to the borrower for the amount of such unaccrued interest charged by Nationstar and paid by the borrower.

95.    Plaintiff and members of the Post-Payoff Interest Class have performed all or substantially all of the obligations imposed on them under the Loan Documents and any other governing loan-related documentation in effect between February 7, 2015 and the present.

96.    Plaintiff and members of the Post-Payoff Interest Class sustained monetary damages as a result of Nationstar's collection of and failure to reimburse payments for unaccrued interest in breach of the Loan Documents and other governing loan-related documentation in effect between February 7, 2015 and the present.

**THIRD CAUSE OF ACTION**
**Breach of Contract**
**(On behalf of Plaintiff and the Late-Fee Class)**

97.    Plaintiff repeats and realleges the allegations of paragraphs 1-76 set forth above as though fully set forth herein.

28

CLASS ACTION COMPLAINT

98.    Plaintiff contracted for mortgage lending services on the terms set forth in the Loan Documents (*i.e.*, the "Note" and "Loan Agreement" governing the Loan) that Plaintiff and Velocity entered into on August 11, 2014, the rights and obligations of which were subsequently assigned to Nationstar on October 21, 2016, via Seneca and/or other intermediary entities.

99.    Like Plaintiff, each member of the Late-Fee Class contracted for mortgage lending services with Nationstar directly or with another entity that subsequently assigned the pertinent mortgage loan to Nationstar (or to another predecessor entity which in turn assigned the pertinent mortgage loan to Nationstar), on the same or substantially the same terms as set forth in the Loan Documents that Plaintiff and Velocity entered into on August 11, 2014.

100.    In plain, clear, and simple language, in the Loan Documents and related account documentation in effect between February 7, 2015 and the present between Nationstar and Plaintiff and others similarly situated, Nationstar promised Plaintiff and all other Late-Fee Class members that it would refund any overpayments made by the borrower in the course of paying off his or her loan in full.

101.    Nationstar breached the express terms of the Loan Documents and other loan-related documentation in effect between February 7, 2015 and the present by charging (and failing to refund) Plaintiff and the Late-Fee Class members a "late fee" as a result of a monthly mortgage payment that was remitted to and received by Nationstar on or in advance of the corresponding payment deadline specified by Nationstar in the pertinent monthly mortgage statement.

29

102.   Specifically, by assessing to and collecting from Plaintiff a "late fee" as a result of a monthly mortgage payment that was timely made by Plaintiff and received by Nationstar on October 10, 2017, Nationstar breached the Loan Agreement, causing Plaintiff to suffer damages of $218.66, the amount of the improperly-assessed "late fee."

103.   Between February 7, 2015 and the present, Nationstar likewise assessed "late fees" to numerous other borrowers as a result of monthly mortgage payments that were made by the borrower and received by Nationstar in advance of the due dates for such payments, and has failed to issue refunds to the Late-Fee Class members as a result of their payment of such late fees.

104.   At no time between February 7, 2015 and the present did any contractual provision exist authorizing Nationstar to assess to Plaintiff or any other Late-Fee Class member a "late fee" as a result of a timely-made monthly mortgage payment.

105.   Plaintiff and the members of the Late-Fee Class have performed all or substantially all of the obligations imposed on them under the Loan Documents and any other governing loan-related documentation in effect between February 7, 2015 and the present.

106.   Plaintiff and members of the Late-Fee Class sustained monetary damages as a result of Nationstar's collection of and failure to reimburse improperly-assessed "late fees" in breach of the Loan Documents and other governing loan-related documentation in effect between February 7, 2015 and the present.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On behalf of Plaintiff and the Force-Placed Insurance Class)**

107.   Plaintiff repeats and realleges the allegations of paragraphs 1-76 set forth above as though fully set forth herein.

108.   Plaintiff and all similarly situated members of the Force-Placed Insurance Class have mortgages that are serviced and/or owned by Nationstar.

109.   Plaintiff's mortgage loans and the mortgage loans of the members of the Force-Placed Insurance Class were and/or are written on uniform mortgage forms and contain substantially similar provisions regarding force-placed insurance requirements and its placement by Nationstar.  The force-placed provision from Plaintiff's mortgages is set forth above in paragraph 53.

110.   The Loan Documents required Plaintiff to maintain insurance on her properties and provided that if she failed to do so, then the servicer or lender would be permitted to obtain insurance coverage to protect its interest in the property or properties, "force place" the coverage, and charge the borrower (*e.g.*, Plaintiff) the cost.

111.   Nationstar breached Plaintiff's and the Force-Placed Insurance Class members' mortgage agreements by charging Plaintiff and the Force-Placed Insurance Class members for excess and unnecessary force-placed insurance coverage, as such coverage did not and does not protect Nationstar's rights in their collateral or cover their risk.  Indeed, at all times material hereto, Plaintiff and the Force-Placed Insurance Class members were overcharged for insurance force placed by Nationstar.

112.   Nationstar breached the Loan Documents and any other governing loan-related documentation by, among other things, charging Plaintiff and Force-Placed

Insurance Class members unnecessary force-placed insurance costs. Specifically, Nationstar charged Plaintiff and numerous other borrowers amounts for force-placed insurance that included unearned "commissions" or kickbacks and other impermissible costs. These expenses were not costs of coverage and were not applied to protecting Nationstar's rights or risk in the collateral for Plaintiff's Loan or the mortgage loans of the members of the Force-Placed Insurance Class.

113.   Plaintiffs and the Force-Placed Insurance Class members have suffered damages as a result of the Nationstar's breaches of contract.

### FIFTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (On behalf of Plaintiff and the Force-Placed Insurance Class)

114.   Plaintiff repeats and realleges the allegations of paragraphs 1-76 set forth above as though fully set forth herein.

115.   A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

116.   Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

117.   The Loan Documents and other governing loan-related documentation allow Nationstar to force place insurance coverage on Plaintiff and the other Force-

1   Placed Insurance Class members in the event of a lapse in coverage, but these contracts

2   fail to define standards for selecting an insurer or procuring an insurance policy.

3       118.   Thus, the Loan Documents and other governing loan-related

4   documentation afford Nationstar substantial discretion in force-placing insurance

5   coverage. These contractual documents purportedly permit Nationstar to unilaterally

6   choose the company from which it purchases force-placed insurance and negotiate any

7   price for the coverage it procures. Originators and/or servicers like Nationstar have an

8   obligation to exercise the discretion afforded it in good faith, and not capriciously or in

9   bad faith. Plaintiff does not seek to vary the express terms of the mortgage contract,

10  but rather seeks to insure that Nationstar exercises any discretion to which it is entitled

11  in good faith.

12      119.   Nationstar breached the implied covenant of good faith and fair dealing

13  by, among other things:

14          a.   Manipulating the force-placed insurance market by selecting

15               insurers that artificially inflated and continue to artificially inflate

16               premiums to include kickbacks to Nationstar or its affiliates and

17               issue excess insurance coverage not necessary to cover Nationstar's

18               risk, and by contracting to create "back room" deals whereby

19               insurance coverage is routinely purchased from its partner insurers

20               without seeking a competitive price;

21          b.   Exercising its discretion to choose an insurance policy in bad faith

22               and in contravention of the parties' reasonable expectations,

23

24

CLASS ACTION COMPLAINT

1                             including by purposefully selecting force-placed insurance policies

2                             with artificially inflated premiums to maximize its own profits;

3         c.      Assessing inflated and unnecessary insurance policy charges

4                             against Plaintiff and the Force-Placed Insurance Class members and

5                             misrepresenting the reasons for the cost of the policies;

6         d.      Allowing Nationstar or its affiliates to collect a percentage of the

7                             amounts charged to Plaintiff and the Force-Placed Insurance Class

8                             members as a kickback and not passing that percentage on to the

9                             borrower, thereby creating the incentive to seek the highest-priced

10                            force-placed policies possible;

11        e.      Force placing insurance coverage in excess of what is required by

12                           law or the mortgage agreements entered into by Plaintiff and the

13                           Force-Placed Insurance Class members; and

14        f.      Force placing insurance coverage in excess of that required to cover

15                           the servicer's or lender's interest in Plaintiff's and the Force-Placed

16                           Insurance Class members' properties, or the balance owed on

17                           Plaintiff's and the Force-Placed Insurance Class members' loans.

18       120.  As a direct, proximate, and legal result of the aforementioned breaches of

19 the covenant of good faith and fair dealing, Plaintiff and the Force-Placed Insurance

20 Class members have suffered damages.

# PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief against Nationstar:

A.   Certification of this action as a class action as defined herein, and appointing Plaintiff and her counsel of record to represent the proposed Classes defined herein;

B.   Declarations that Nationstar breached its contracts with and the duties of good faith and fair dealing that it owed to Plaintiff and members of the proposed Classes, by charging Plaintiff and members of the Double-Billed Class twice for the same monthly mortgage payment; assessing unearned, post-payoff interest to Plaintiff and members of the Post-Payoff Interest Payment Class; assessing late fees to Plaintiff and members of the Late-Fee Class for monthly mortgage payments that were timely made; and imposing force-placed insurance policies on, and assessing the associated insurance premiums to, Plaintiff and members of the Force-Placed Insurance Class;

C.   As a result of Nationstar's breaches of contract, violations of its duties of good faith and fair dealing, an order requiring that Nationstar:

    i.   Disgorge all profits by which Nationstar has been unjustly enriched as a result of its unlawful practices at the expense of Plaintiff and the members of the Double-Billed Class, Post-Payoff Interest Payment Class, Late-Fee Class, and Force-Placed Insurance Class; and

    ii.   Compensate Plaintiff and the members of the Double-Billed Class, Post-Payoff Interest Payment Class, Late-Fee Class, and Force-

35

Placed Insurance Class for all damages incurred as a result of Nationstar's unlawful practices;

D.    An order awarding damages pursuant to the causes of action alleged herein, as may be applicable;

E.    An order awarding reasonable attorneys' fees and costs;

F.    An order awarding prejudgment interest to the extent allowed by law; and

G.    An order providing such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  February 7, 2019

Respectfully submitted,

By: /s/ Tina Wolfson
      Tina Wolfson

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Dr.
Los Angeles, California 90024
Telephone:   (310) 474-9111
Facsimile:    (310) 474-8585

By: /s/ Frank S. Hedin
      Frank S. Hedin

Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

David W. Hall (SBN 274921)
dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone:   (415) 766-3534
Facsimile:    (415) 402-0058

*Counsel for Plaintiff and the Putative Classes*

37

CLASS ACTION COMPLAINT